# Index

**PAGES:**

**COVER SHEET**

**ANSWER TO ORDER -(9) PAGES**

1. -2 Income verification (for michele & Edgar harris)

3.-7 Second page (original order)

8.-10 Civil dockets for case (obtained at John Q Hammons)

11.-22 Jeffery Humphrey (Attorney general)

23.-36 Sewage Dept.

37.-63 HAS PROPERTIES

64.-HS MANAGEMENT

# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| MICHELE KIMBERLY HARRIS and<br>EDGAR SIMM HARRIS,<br><br>Plaintiff's<br><br>v.<br><br>SPRINGFIELD HOUSING AUTHORITY,<br><br>Et al., | )<br>)<br>)<br>)<br>)<br>)  case No. 24-03238-CV-SJ-BP<br>)<br>)<br>)<br>)<br>) |

## ANSWER TO ORDER TO SHOW CAUSE WHY ORDER GRANTING IN FORMA PAUPERIS STATUS SHOULD NOT BE VACTED

Plaintiff were granted in part to proceed in forma pauperis 28 U.S.C. 1915(a)(1) on some of the defendants in this claim, on the fact that Judge Brian Gaddy's original order to GRANT IN PART forma pauperis, by taking out 5 of the defendants on or about October 10th, 2024. The Plaintiff's personally walked the initial claim into the John Q Hammons way Federal Court Building and submitted the legal notarized court documents to the clerks in that office. The clerk when asked by the plaintiffs if there were any updates on the case, the plaintiffs were handed court document (see exhibits 6th page) that had all plaintiffs and defendants present but five of the defendants were removed saying "TERMINATED" without any other knowledge to why and didn't show up in pacer as "TERMINATED". This is why the case was not making any sense to the courts, documents were removed. The case was then moved to Kansas City for further proceedings. Plaintiffs waited patiently for any defendants to respond to the courts since the initial claim was submitted, even when the marshals served the defendants, still no answer, giving extra time for defendant to respond to a court motion, order or anything. We are not sure what documents were taken out, so we have prepared another copy of documents that were not submitted to the court to make this case seem to have any merit. Court documents were not submitted when documents were to be scanned at John Q Hammons way Federal Court Building, by the clerks, (Subsection (9) of Section 152 prohibits the fraudulent withholding of any recorded information.) The Federal Tort Claims Act (FTCA) provides a legal basis for suing the federal government for emotional distress caused by its employees. Plaintiffs have enclosed missing documents that were not uploaded to the pacer system as best as they can, we apologize for the inconvenience of overwhelming evidence of exhibits. when Plaintiff's

personally dropped off papers to the clerk and some were not uploaded, or some scanned in twice, ( This could be considered spoliation of evidence) if done intentionally, or "clerical error" if unintentional, depending on the specific circumstances and the clerk's motive. The legal term that describes the intentional destruction or concealment of evidence that is relevant to a legal case. If the clerk did intentionally deliberately withheld paperwork, it should be considered spoilation. (so not to make another mistake we ask the court to forgive the plaintiffs for having to mail another copy of the original evidence). We do not pass judgement on the courts misunderstanding. We write now only to clarify the Judges orders as to why this case is not frivolous, unreasonable or groundless.

## **SPRINGFIELD HOUSING AUTHORITY**

1. Employees of Springfield Housing Authority, Nicole Looney, Rebecca Pashia, Teressa Osborn, HUD- Arlene Ozores, all were motivated by discrimination and racial anmus when they evicted plaintiff's out of section 8 for WHISTLE BLOWING. Williams v White, 897 f2d 942, 943 (8th cir 1990), this standard is higher than the standard for dismissing a case under rule 12(b)(6) of the federal rule procedure. Under this standard a complaint must contain sufficient factual content to allow the court to draw the reasonable interference (more than sheer possibility) that the defendant is liable for the misconduct alleged Ashcroft v Iqbal 556 US 662,678(2009) e.g. Horras v American Capital Strategies Ltd. 729 F.3d 798,801(8th cir 2013). Plaintiff's claim for seeking relief non-frivolous and this case has Merits, Facts. And Case Law along with some exhibits. When reported, to any agency including Hud, as you see in the exhibits (under housing authority section in evidence). this case was passed on and no one wanted to help so plaintiffs took all they had being disabled, with senior service care supervision, and build up resilience to fight back and fight this case on our own prose. We were bullied when asked about our yearly raises by Nicole looney and Rebecca pashia and Teresa Osborn. So, Plaintiff's found that Nicole Looney had not been giving Plaintiff's the allotment raises for their rent. When Plaintiff's brought up their missing money allotments, at the informal hearing at 421 west Madison has properties with Rebecca pashia, Nicole looney, and Teresa Osborn, Rebecca pashia was sent to the meeting by Arlene Ozores to mediate the meeting. Arlene Ozores thought it would be a good idea to send someone (Rebecca pashia) who knows nothing about the incident and Arlene Ozores did know and had knowledge of the complaint. Plaintiffs had been communicating with Arlene Ozores for a while since the report of sewage came across her desk from Plaintiff's, April 2024.Rebecca Pashia said nothing in the meeting, but she did evict Plaintiff's from section 8 program, per her signature. Regarding the letter we received two months later. (see housing authority section for exhibits) Rebecca terminating the plaintiffs (on the grounds of what the landlord said). Rebecca was sent to mediate but Teresa Osborn and Nicole looney did all the

talking no one wanted to talk about the missing money, not even talk about my family being in a safe home. when Edgar harris told the ladies he just got off the phone with the attorney general, and Edgar harris said the attorney general said this is fraud cause money missing,(see attachment per Housing Authority Rule Handbook housing authority section) Nicole looney, spoke up for everyone and said (it was me If it's the a allotments it's all on me and ill fix it.)I called a month later from June 7th 2024 because I heard nothing from no staff member since the meeting, so I reached out to Nicole looney and she said Teresa was handling the decision. I contacted Teresa, she too passed the buck and said looney had the final answer. I called Arlene and she said it was out of her hands it was up to the ladies at the housing authority to make that decision. The plaintiffs had moved on their own. Not anyone from any of their offices (Defendants) nor one came out to our resident before during or after the flooding started. The plaintiff's house started to smell so bad we had to call the city of Springfield health department and when the inspector Chad Stauffer arrived the smell was horrendously bad. and that's when we got tagged with a Dangerous Building sign and put on our door by the inspector because it was hazardous to our health per the hazmat that came out Chad Stauffer the inspector, came out and assessed the property, to be in this house, Chad Stauffer asked if we had anywhere to go at that moment we said no. Chad Stauffer would not release certain information in his report to the plaintiffs when asked for the sunshine report, half or none of what he said was in that report.

## HS MANAGEMENT-REEDS PLUMBING

2. Plaintiffs moved to 1012 east division s.t Springfield Missouri 65802 October 25, 2023. If it had not been for HS Management-Reeds Plumbing, denying our family to moving out of sewage with feces floating in our basement and coming into the drains of the main house after backing up in our basement, since plaintiffs moved in 1012 east division St. Springfield Missouri 65802. Defendants were subjecting Plaintiff's and family to live in conditions no one should live in and being held hostage according to the city of Springfield sewage departments personnel Phill Barber and his team who is the only department that stepped up and actually came out and assessed the sewage problem and found that my landlord is and was at fault and not the city of Springfield's sewage department or the plaintiff's fault. HS management-Reed's pluming, Sonya Taylor told Nicole looney of Housing authority it was rainwater that flooded the plaintiff's basement in their home, not sewage and Sonya Taylor, sara miller, both told Section 8 coordinator that plaintiffs was behind on rent. Which is impossible (if I don't pay the housing authority don't pay) so Nicole looney agreed it was rainwater without anyone investigating instead of telling the plaintiffs that's not either of their jobs to go to client's house for something at all.

Teresa Osborn convinced Rebecca pashia that it was rainwater after making a comment to the plaintiffs that the sewage department is not right, the letters sent to Plaintiffs from Phil barber of sewage department was lying. When plaintiffs said the city said it was sewage, Teressa leaned into Rebecca and told her that Housing authority doesn't have to do what the city of Springfield says because (violation of Due Process) upon the meeting there was a special inspection that failed inspection the same day at 1012 east division s tsp mo. 65802.The city inspector Chad Stauffer came out to inspect. Both inspections failed. (U.S. Supreme Court United States v. Michael Taylor. Plaintiff's and family moved and sara miller gave the new landlord a bad reference saying I had not paid my rent. And I was behind 3 months. I relayed that to the housing authority, Arlene Ozores HUD. I even made a complaint to the Attorney General (Jeffery Humphreys), he sent it to Washington, said it was above his pay grade and sent a letter stating just that, and we heard nothing back from Jake Humphreys except for the few weeks. He had the case and said he investigated the case. ( I have not fully recovered from my surgery that I had the same day I had to go down to the section 8 building because I was being put out for reporting the sewage and wanting to move to a safer place for our family,(April 29th 2024) Plaintiffs have lost so much, mentally, emotionally, sentimental and memorabilia we cannot get back, and could not retrieve it from the house because of the raw sewage and feces and rodents(mice) that the city also said the amount of mice poo, bad wiring, no smoke carbon monoxide detectors, that was in this house, wasn't something we could have done from moving in on October 25 2024, but landlord refused a safe move for plaintiff's and our family anyway. While Sonya Taylor, was initiating all the moves, Sonya Taylor would designate sara miller to do initiate evictions and misconduct towards tenants. Sara miller on several occasions has told plaintiffs that the basement flooding was not our fault when we first moved in, we had a flood back up and she said it happens all the time. So, the landlord was knowledgeable about the flooding of their basement because per the city of Springfield sewage department and inspector Chad. The problem started with the sewage and turned into a coarsen of the workplace, the more I complained the more supervisor came out of nowhere doing nothing but blaming my family for what a landlord has done to us in their homes.

## **CITY UTILITIES**

3. On our current bill we click on the view bill button, and it takes me back to a 2076.81 bill due on December 13, 2024, but the bill itself due on the main screen is showing $ 925.35 due on December 13th, 2024, as we show in the exhibits this is not the first time. Ever since this sewage claim was filed with the sewage department, our electric bill has been going up(see attachments) we constantly go up to the utility

company to talk about the bill and we have spoken to senior Ryan and Scott and they won't talk to you about your bill so I am presenting to the court the evidence of pompadours evidence months after months of over charging and we cant afford it. Our electricity gets shut off for as little as 80 bucks.

When we make a payment and clear the whole account, someone in city utilities is adding my payments, oacac payments and my church LDS. With bishop rick Robinson who has made numerous payments with a church check or card. This is not the first time this has happened. I have reported several times to the utility company and other agencies for help. When I click on the bill to attempt a payment the screen redirects me to the bill of $2076.81 and the regular bill right now on the screen is $925.35. We have been getting charged for sewage and our sewage line was cut off from the city's sewage line, a push cam was ordered to go down in the hole, hazmat was called out two days in a row and this is why I believe Judge Gaddy put in the claim it was the sewage department, along with some of the documents weren't submitted when dropped off to the John Hammons federal court building. The sewage department has paid out the sum of $ 2000.00 dollars because while my landlord said it was rainwater and Springfield Housing Authority agreed without investigating or coming out to the resident, when brought to Nicole looney's attention she said "that is not my job) and why didn't we call a plumber. because we had standing water in the basement and tub and sink we obviously called the landlord but as we stated no one came out until we called hazmat and sewage department came as well. Nicole looney's job description speaks for itself Head Section 8 Coordinator Which means she could have moved me because we followed the right procedure to move out, not only did we get it in writing, Teresa Osborne advised my family to move but pay rent first, so we did just that then before Nicole looney got involved Teresa said she was handling the matter. Teressa had a lot to say but held back her hand, this is why I recorded the meeting on June 7th, 2024.

## STATEMENTS OF FACTS

1. Every defendant and their lawyers have had equal time to answer the courts or the judge. Because none of the defendants answered, and we the plaintiffs even gave the defendants enough extra time even when time lapsed and or ran out. As plaintiffs we wanted a fair trial. Proper notification was sent out to all defendant's lawyers, on three occasions, Judge Gaddy asked defendants to respond, those dates passed and with no respect to the courts or Judges in this case. Springfield Housing Authority employees abused their authority acting under the color of law. without first, determining that the plaintiffs (Michele Harris & Edgar Harris's) claim was frivolous, unreasonable, or groundless. Instead of helping the plaintiff move into another resident, Plaintiff's was forced to live like animals with cruel and unusual punishment to sewage and mice that are not pets. Plaintiffs, who have the right by law to live in such homes. The eighth Amendment to the Constitution protects citizens against cruel and unusual

punishment. but when plaintiffs asked to move, Plaintiffs were put out with nowhere to go. Each person involved in this case is at some fault. Defendants were all in a position to help us get into another place, we were not behind on rent, and no one is on parole to stipulate where to move. Not being able to move per landlord and section 8 but with approval, Sara called New landlord of plaintiff and said we don't pay our rent and the new landlord told us that's not good.

2. When we went to oacac to ask to move to another county we was still on the wait list so ocac had me take portability papers to Nicole looney and she would not sign, because if she(Nicole looney) let me port over to another county and department Oacac would find out the amount of money we was allotted for wasn't being given to my family, we was paying 856 on a 900.00 dollar rent out of my 956.00 dollar check. HAS property been supposed to be paying 856 or so and I wasn't supposed to pay more than section 8. The allotments for my rent with raise each yr. Are listed as exhibits. With respect to the court, the FHA (fair housing act) prohibits discrimination with respect to opportunities to obtain housing. In the terms and conditions of ALL agencies, HS MANAGEMENT, AND SPRINGFIELD HOUSING AUTHORITY, CITY UTILITIES. (city sewage was a misprint by the clerks and put city sewage)( if all evidence would not have been taken out plaintiffs would not have to keep suffering and being depressed from the loss and challenges from the defendants, as all defendants have violated the plaintiff's Rights. Disabilities Act, which prohibits people from discriminating against people with disabilities. We the plaintiff's feel that because of our mental abilities and our lack of knowledge to the law, housing authority, City utilities, Hs Management-Reed Plumbing, and Arlene Ozores, all took advantage of the plaintiff's and held them accountable for the actions of the landlord not properly upkeeping and maintain their properties and Section 8 not properly inspecting the properties units before section 8 clients move in,(we had two inspections and one passed when we moved in and when the city came we failed 4 months later. Section 8 office and the landlord still didn't want us to move. Plaintiffs apologize to the court for missing documents not of plaintiff's fault but have resubmitted new documents (see attachments)

## **FACTS**
1. All the mobbing in the workplace refers to a group of colleagues in a workplace who band together as a means to harass, humiliate, intimidate, or bully, meaning papers coming up not scanned in, missing legal documents, court documents, electric bill,

being added to not taken away. Coercion Occurs when a person in a position of authority uses their power to influence behavior or force compliance.

A. Section 242, Title 18 of the U.S. Code makes it a crime for a person acting under color of any law to willfully deprive a person of a right or privilege protected by the Constitution or laws of the United States.Violation of Civil Rights Act 1964: This Act has also been violated "person" includes one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint--stock companies, trusts, unincorporated organizations, trustees,
B. Can involve threats, intimidation, or punishment.
C. Can involve threats, intimidation, or punishment. Living in inhumane living situation, being subject to being held hostage in the home which you call home. (thanks to making copies) the court should see the facts in this claim are not frivolous. Pinkerton v. United States, in 1946. Walter and Daniel Pinkerton Supreme Court of the United States. Our rights have been violated by the Civil Rights Act 1964 for discrimination of cruel and unusual punishment for making us stay in feces with no repairs.

D. 1983 provides, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

2. In Heck v Humphry, The District Court dismissed the action without prejudice, because the issues it raised "directly implicate the legality of [petitioner's] confinement," Id., at 13. While petitioner's appeal to the Seventh Circuit was pending, the Indiana Supreme Court upheld his conviction and sentence on direct appeal, Heck v. State, 552 N.E.2d 446, 449 (Ind. 1990); his first petition for a writ of habeas corpus in Federal District Court was dismissed because it contained unexhausted claims; and his second federal habeas petition was denied, and the denial affirmed by the Seventh Circuit.(meaning the case was remanded and the case sent back to the lower court because the higher court found in error in a procedure. The plaintiffs have answered and shown good cause why we should be granted relief. We asked that the order to vacate Granting IN FORMA PAUPERIS be dismissed, and to grant the plaintiffs the relief they sought, in this claim on the writ of execution THEREOF.

3. When the Seventh Circuit reached petitioner's appeal from dismissal of his 1983 complaint, it affirmed the judgment and approved the reasoning of the District

Court: "If, regardless of the relief sought, the plaintiff [in a federal civil rights action] is challenging the legality of his conviction, 2 so that, if he won his case, the [ HECK v. HUMPHREY, ___ U.S. ___ (1994), 3] *state would be obliged to release him even if he hadn't sought that relief, the suit is classified as an application for habeas corpus, and the plaintiff must exhaust his state remedies, on pain of dismissal if he fails to do so."* 997 F.2d 355, 357 (1993). Heck filed a petition for certiorari, which we granted. 510 U.S. ___ (1994).

A. In Heck v Humphry for Fred Nance Jr. appeals the dismissal of his complaint for failure to state a claim upon which relief can be granted. Nance brought his complaint pursuant to 42 U.S.C. § 1983, alleging that he was confined to disciplinary segregation for thirty days in violation of several of his constitutional rights.

4. In Christiansburg, the Supreme Court held that, under the fee-shifting provision of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-5(k), attorney's fees should be awarded to a prevailing defendant only if the plaintiff's claim was "frivolous, unreasonable, or without foundation." 434 U.S. at 421; see summers v. A. Teichert & Son, Inc., 127 F.3d 1150, 1154 (9th Cir. 1997). Summers construed

A. Christiansburg as instructing that "attorney's fees should be granted to a defendant in a civil rights action only 'upon a finding that the plaintiff's action'" met the Christiansburg standard. 127 F.3d at 1154 (quoting Christiansburg, 434 U.S. at 421). Applying that standard, Summers held that a grant of attorney's fees to a prevailing defendant in an action brought under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., would be improper unless a plaintiff's underlying claim was "frivolous, unreasonable, or without foundation," 127 F.3d at 1154 (quoting Christiansburg, 434 U.S. at 421).

B. Christiansburg applies to the award of both fees and costs to a prevailing defendant under the ADA. See Brown, 246 F.3d at 1190. The ADA's fee shifting provision states that a court "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205. In Brown, we held that the ADA's statutory text "makes fees and costs parallel," and that the Christiansburg standard therefore applies equally to both. 246 F.3d at 1190.

C. a plaintiff bringing suit under the Fair Housing Act should not be assessed fees or costs unless the court determines that his claim is "frivolous, unreasonable, or groundless." Christiansburg, 434 U.S. at 422.

D. First, Second, and Fourth, and Fifth Circuits, all of which have applied the Christiansburg standard in the Fair Housing context. See Casa Marie Hogar Geriatric, Inc. v. Rivera-Santos, 38 F.3d 615, 618 (1st Cir. 1994); Taylor v. Harbour Pointe Homeowners 690 F.3d 44, 50 (2d Cir. 2012); Bryant Woods Inn, Inc. v. Howard County, 124 F.3d 597, 606 (4th Cir. 1997); Providence Behav. Health v. Grant Rd. Pub. Util. Dist., 902 F.3d 448, 460 (5th Cir. 2018).

E. There is no indication in the record that the district court applied the Christiansburg standard when awarding costs. Moreover, as we reverse the grant of summary judgment in part in the accompanying memorandum disposition, it is apparent that it cannot be said at this juncture that Green's claims were overall "frivolous, unreasonable, or groundless." Christiansburg, 434 U.S. at 422. We therefore vacate the costs award. Costs should be awarded at the
F. 8 GREEN V. MERCY HOUSING conclusion of the litigation, applying the Christiansburg standard should Mercy Housing ultimately prevail. VACATED and REMANDED.

In particular, the basis of discrimination we believe all defendants are accountable in their own official capacity under the color of law. Therefore, we inform the court that the Immunity for anyone in this case is MOOT. (see attach) (Section 242, Title 18 of the U.S. Code) makes it a crime for a person acting under color of any law to willfully deprive a person of a right or privilege protected by the Constitution or laws of the United States.

1. Governmental immunity is a legal concept that protects the government and its officials from certain types of legal actions or lawsuits. Governmental immunity is a common law doctrine that originated from the idea that the government is the embodiment of the sovereign power, and therefore, it cannot be sued without its consent.

Under this concept, the government, as an entity, is immune from being held responsible for its actions or inactions that cause harm to people, provided that the harm was caused while performing its governmental functions.

2. The scope of governmental immunity varies from jurisdiction to jurisdiction, but generally, it covers policymaking, law enforcement, and regulatory functions.

However, governmental immunity is not absolute, and there are exceptions to the doctrine. For example, when the government engages in commercial activities or activities unrelated to its governmental functions, it may be held liable for any harm caused. Additionally, if a government official or agency violates an individual's constitutional rights, they may be able to sue for damages.

Under government laws, governmental immunity is closely related to governmental liability, as it determines the extent to which the government can be held liable for its actions.

In cases where the government is not immune, the concept of governmental liability comes into play. In these cases, the government can be held responsible for harm caused by its actions, and victims can seek damages for their losses.

3. Sovereign immunity is a concept similar to governmental immunity, but it applies to the state's immunity from being sued in its own courts. Sovereign immunity is based

on the idea that the state cannot be sued without its consent, and it extends to all state activities, including those that are commercial or proprietary in nature.

It is simply an illegal act upon the part of a state official in attempting by the use of the name of the State to enforce a legislative enactment which is void because unconstitutional.

## **Conclusion**

The plaintiffs believe the defendants acted maliciously with intent to harm tenants, by making them live in feces, sewage and rodents at what was suppose to be what they call home, instead the defendants in this case showed much malice by not showing up because they figured the plaintiffs would go away. Our family has suffered enough, we had a lot of pain caused because we had to leave all of our memorabilia, clothes furniture, Christmas decorations, our health is declining and all this moving is taking a toll on both of us. We will not have a Christmas this year, but we pray the court looks at this case to have merit, we pray we submitted enough evidence for the court to make a final decision in this case, and with an abundance of evidence to prove to the courts that we deserve the relief sought in our writ to execute, and the defendants who have maliciously treated my family like animals get the punishment the court thinks they deserve. We also submitted some other forms for the us Marshalls and that is not in the file either, being that we are prose and not knowing as much as some think we were not sure if clerk took the forms out because we didn't need it at the time, or these documents are also not submitted by John Q Hammons clerks. We ask the court to dismiss the Vacate of Granting In Forma Pauperis and grant the plaintiff's Forma Pauperis to proceed, and grant the award amount plaintiffs are seeking in the writ of execution. $ 11,850.000.000

X

X

X